Johnson, J.
By the act of March 14,1850, which took effect May 1, 1850 (48 O. L. '87), “the parties to any bond, bill, promissory note or other instrument of writing, for the pay *366 ment or forbearance of money, may stipulate therein . . . at any rate not exceeding ten per centum yearly.”
This statute was repealed February 25, 1859, and the repeal took effect April 1, 1859, but by an act of March 31, 1859 (1 S. & 0. 745) the repeal did not affect existing ten per cent, ■contracts, nor such as should be made before the repeal took ■effect.
By the act of 1848 (1 S. & C. 744), all payments of interest above the legal rate were to be treated as payments on the principal, when the note was not in the hands of a bona fide holder, purchased before due.
This note was without interest, and upon its face bore six per cent, after maturity.
The burden of allegation and proof that the contract, as expressed by the note, had been converted to a ten per cent, •contract rested upon the plaintiff.
The court having no other evidence before it, upon the issue made, than the pleadings, found that the contract to pay interest at six per cent, had not been converted into one to pay ten, but following the decision in Samyn v. Phillips, 15 Ohio St. 218, allowed all payments of interest at the rate of ten per cent, made during the existence of the ten per cent, statute to stand as such, and treated all subsequent payments in excess of six per cent, as credits on the principal.
To reverse this judgment two errors are assigned.
1st. That the court erred in ruling out the written agreement of Bebb, found among White’s papers, giving his consent to an extension to Campbell, which it is therein stated White had agreed to give, and reciting that White had, with his consent, agreed to give time to Campbell. *
2d. That the court erred in holding that there was no valid contract changing the rate of interest from six to ten per cent.
1st. As to the rejection of the written statement and agreement of Bebb.
It is dated March 16, 1852, two months after the note was •due, and more than eight months before Campbell’s promise to pay ten per cent., and after B. had parted with his interest in the note.
*367 It appears from the record that Bebb had waived demand, notice and protest, so that, at the time he signed this paper, he was liable on the note as an indorser.
One of the objects of this instrument was to waive any right he might have to be discharged if White should give time on Ihe note.
Another object seems to have been to induce White to grant ■further time to Campbell, who it seems was unable to pay, by neason of losses by fire, &c.; hence he agrees that if Campbell •does not pay the ten per cent., he will. This agreement was ¡signed by Bebb, and was made for the benefit of White.
Bebb is not a party to this action. This paper was one executed to White; Campbell was not a party to it, nor does it appear that he ever knew of its existence until it were offered in evidence. White’s title and ownership of the note was not in issue on the trial, and hence the declarations of Bebb that he had negotiated the note to White, or his statements in favor of White, were not material except to prove the allegation that White had agreed to give time on the note.
■ The. issue to be tried was, whether there was a consideration to support Campbell’s promise of November 27th, that is, whether White’s promise of delay was a consideration for •Campbell’s promise to pay ten per cent.
The statement made by Bebb to White, that he, White, had consented, with his consent, to give time, is brxt the declaration •of a third party, a stranger to Campbell’s agreement, of what White had agreed to do.
It was no part of the res gestee, and was inadmissible in favor •of White for the purpose for which it was offered, namely, to prove a mutual promise by White, in consideration of the promise made by Campbell. In the absence of anything tending to show that Campbell knew of the existence of this agreement of Bebb with White, or that he had acted upon the faith •of it, it was clearly inadmissible to prove that White had promised to delay or give time.
2d. Did the court err in treating the payments made after April 1, 1859 (the date of the repeal of the ten per cent, law), *368 in excess of six per cent., as payments on the principal of the note ?
This depends on the validity of Campbell’s promise to pay ten per cent.
In this promise he says: “ I hereby agree to allow William E. White ten per cent, interest on a note (describing the same) . . . to be allowed until the same is paid.”
The plaintiff alleges that the consideration that made this-promise binding was the promise of White to give time. No' proof of this is offered, and we are asked to presume or imply that such a valid contract was in fact made, from the fact that annual payments of interest were made for several years by Campbell, who enjoyed the benefit of actual delay during the time of these payments.
The statute requires that the contract to pay the increased rate must be in writing, and while it may not be necessary to-express the consideration for the promise in the contract, yet. to make it valid as a change of the terms expressed by the note,, it should be supported by a valid consideration. The fact of' giving time indefinitely, and the payment annually of ten per cent., do not warrant the inference that there ever was any binding obligation pre-existing on the part of White, which was enforceable by Campbell.
Without a definite obligation by White to support Campbell’s promise, the terms of the note are not modified. If he was at liberty at any time to collect the note, as he seems to-have been, there was no statutory change of its terms.
But it is urged that, as the delay was actually granted for a. series of years, the contract became, on the part of White, an executed one, which made Campbell’s promise binding; and reference has been made to a numerous class of contracts, where the rule that the promise of one is void for want of mutuality, is confined to cases where want of such mutuality would leave the promisor without a valid consideration at the Ume he is to perform his promise. L’Amoreux v. Gould, 7 N. Y. 349.
In other words, that Campbell’s promise to pay ten per cent, until the note is paid, though void for want of mutuality, be *369 came binding, because time was actually given, as desired by Campbell.
It is undoubtedly true that when the promise is made on certain and definite terms or conditions, open to acceptance, or to be acted upon by the promisee, it becomes a binding promise upon such acceptance or performance, though void for want of mutuality before such acceptance or performance.
Instances of this class of contracts may be found in cases of conditional, optional and gratuitous promises, and also in some forms of guaranty.
In all such cases it is an essential element of the promise that it is based upon terms or conditions, express or implied, which can be accepted and performed. In such cases the execution of these terms or conditions by the promisee constitutes a valid consideration, and from the time of such execution the promise becomes binding.
If Campbell’s promise be examined, it will appear that it is not such as comes within the above rule. He stipulated for no definite time of delay, and none was in fact given. The delay that did occur may have been, and probably was, the result of the voluntary act of White, and not because he was under any legal and valid obligation to grant it. - Again, it does not appear that the act of giving time by White was in exeeution of any contract with Campbell, or of any terms or conditions, express or implied, as the consideration of his promise.
To constitute a valid modification of the terms of the promissory note, there must be a new and valuable consideration moving to Campbell to support his promise. None is shown in this case, and none can be presumed to have existed, from the mere fact that he paid the higher rate from year to year, and that indulgence was granted.
The statute requires that the stipulation to pay ten per cent, must be in the eont/raet for the payment or forbearance of money. A strict construction of o this statute would exclude this subsequent contract or promise of Campbell, made on a separate paper. It does not purport to be a contract for the payment or forbearance of the principal debt, but a supplemental promise to pay a higher rate of .interest on the note.
*370 Such, a contract was, however, sustained in Mueller v. McGregor, 28 Ohio St. 265, where the promise to pay ten per cent.' was in a' supplemental contract, in which there was a promise by the creditor to delay for a definite time in consideration of the promise to pay ten per cent. In that case, it was held, that the original contract was modified as to rate of interest for the time named, but that after the expiration of that time, the original rate of interest governed, except as to payments made at a higher rate before the repeal of the ten per cent. law.
We hold, therefore, that to constitute such a modification of the promissory note as to change it from a six to a ten per cent, note, there must have been a valid contract to that effect; that the burden of proving such contract rested upon the plaintiff, that such a pre-existing contract cannot be implied from the payment of ten per cent, for a series of years in pursuance of a voluntary promise to do so, in th¿ absence of any consideration to support such promise, and that, as the promise by Campbell was not coupled with any definite terms or conditions to be accepted or performed by White, the fact that delay was granted by him for a series of years, does not constitute such a performance or execution of a contract as will make the promise by Campbell, which was void for want of mutuality, binding upon him under the statute.

Judgment 'ajfk'med.